22187. DAVIS v. THE STATE.

ARGUED SEPTEMBER 11, 1963—DECIDED OCTOBER 15, 1963—
REHEARING DENIED NOVEMBER 7, 1963.

*Dan C. Mitchell, George Mitchell,* for plaintiff in error.

*William T. Boyd, Solicitor General, Carl Copeland, J. Walter LeCraw, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

QUILLIAN, Justice. Jimmie Davis was indicted, tried and convicted in Fulton Superior Court of the offense of robbery by use of an offensive weapon. The indictment alleged and the jury found the defendant took $72,824.78, checks and money in the sums of $53,493.50 and $19,331.28, respectively, from one George O. Taylor, Jr., the property of Southern Federal Savings & Loan Association. The defendant moved for a new trial on the general grounds and four special grounds. The trial judge

overruled the motion for new trial and the defendant excepted.

■ The defendant in this court insists upon only one general ground, to wit: the evidence did not support the verdict rendered against him. This insistence upon this ground is predicated on the insufficiency of the evidence to establish three facts vital and necessary to his legal conviction: (1) his identity as the culprit who perpetrated the offense; (2) that any money or checks were on the occasion of the robbery taken from George O. Taylor, Jr., and the vault of Southern Federal Savings & Loan Association as alleged in the indictment; (3) that there was proof of the indictment's allegation that the checks and money taken were the property of Southern Federal Savings & Loan Association. ·

On the issue of the defendant's identity as the person who committed the offense the evidence was circumstantial. Mr. Taylor, the vice-president in charge of Southern Federal Savings & Loan Association's office and vault situated in the Hurt Building, Atlanta, Fulton County, Georgia, testified: that on January 4, 1963, at about 7:15 a.m. he entered the association's offices, it was still dark in the offices and that before he had the opportunity to turn on the lights the telephone bell rang; that while he was occupied in answering the telephone two men grabbed him, struck him over the head with a pistol which fired very close to his head, forced him at gun point to open the safe and, after shoving him to the floor face down, entered the association's safe and robbed it. He was bleeding profusely from two lacerations on his head caused by blows with the pistol in the hands of his assailants; so that because of the darkness and the fact that blood was flowing over his face he could not identify the assailants or give an accurate description of them. However, he was able to discern that one was a Negro. He heard the robbers in the safe stuffing money into a paper sack; he was positive it was not an ordinary paper sack, but it sounded like they were placing the money in a shopping bag.

Miss Pat Osborne, a young lady teller who followed Mr. Taylor into the offices of the institution, but went to the teller's cage where she worked and which was in another direction from that in which he proceeded to answer the telephone, testified: that

she heard the shot fired from the pistol, a commotion, and Mr. Taylor groaning; that a Negro wearing a white "bee bop" cap, dressed in dark clothes and apparently wearing a dark leather jacket jumped over a counter in the office and pointed a pistol at her; that he forced her at gun point to lie on the floor and warned her to lie there until he and the other robber had time to make good their escape. The witness described the "bee bop" cap as one having no visible bib, that sits close on the head of its wearer. She lay on the floor a few minutes when another employee arrived and called the police. This same witness related that when the other robber spoke to Mr. Taylor she recognized his voice as that of a Negro.

A witness, Felix Alexander, testified that at about 7:30 a.m. on January 4, 1963, he saw the defendant emerge from the door of the Bird Cage Garage onto a lot occupied by the same concern which fronts on Decatur Street and observed the defendant wearing a cream colored "bee bop" cap and with a leather jacket tucked under his arm proceed across the lot in a trot. He testified he was acquainted with the defendant before the date of the robbery. The witness related that he was at the time talking with another man and they were both impressed, and at the time remarked, that it was a peculiar circumstance that the defendant carried the leather jacket under his arm instead of wearing it because on the morning of January 4th, according to the witness, the weather was cold and he was wearing an overcoat. The witness later identified the defendant, without aid, in a police lineup. He showed the proximity of the Bird Cage Garage to the scene of the robbery by showing its location relative to the location of the Hurt Building where the robbery was committed. He testified as to this matter that Southern Federal Savings & Loan Association, located in the Hurt Building, is diametrically across the street from the Bird Cage Garage which is at 33 Exchange Place; that the garage at its other end opens on the lot in question which faces Decatur Street. So, it becomes apparent that the lot is in the immediate vicinity of the robbery.

The city police, the Federal Bureau of Investigation and the State officers immediately, upon being notified of the robbery,

converged on the location of its commission and proceeded with a thorough investigation. One of the officers at about 9 or 10 o'clock on the day of the robbery found a shopping bag just outside the building where the robbery was committed. Part of a thumb print was found on the bag that was by the uncontradicted evidence of the officers that of the defendant. There was also a splotch of blood on the bag that typed with that of Mr. Taylor. The bottom of the shopping bag had been torn out as though too heavy a load had been placed in it. (It will be remembered that silver was taken from the safe of the Savings & Loan Association and according to the witness Taylor was crammed by the robbers into the paper bag.)

On investigation by the officers, a dark jacket that had the appearance of leather was found in the defendant's home where he resided with a Jessie Mae Murray. She described the jacket as follows: "It was a black jacket, it wasn't leather all over, the sleeves had plastic, it wasn't leather it was plastic . . . vinyl leather, whatever you call the stuff." She stated that it looked very similar to leather. Her testimony was the only description of the jacket.

The evidence clearly showed the defendant had, for some time prior to the robbery, been unemployed and had not been able to pay his bills. Between the date of the robbery and his arrest he paid a considerable sum in past due bills, in satisfaction of new bills, along with sums lost in gambling and also purchased a used truck for cash, the aggregate of all of these items was over $850. He also paid a friend $10 when he only owed him a part of $5.10. He proclaimed to one of the women with whom he lived on a part time basis that he had money stashed away; that he did not have to work and was not looking for a job.

We think the chain of circumstances above related was sufficient to exclude every reasonable hypothesis except that the defendant was the culprit who committed the robbery and authorized the verdict finding him guilty.

■ Ground 1 of the amended motion for new trial complains of the admission in evidence of a certain shopping bag which the movant contends for various reasons was not admissible.

■

The ground is fatally defective because, while it stresses the movant's contention that the shopping bag should not have been admitted into evidence, the ground contains no averment that a timely objection was interposed when this item of evidence was offered and admitted. Hence, the ground is without merit and raises no question as to the admissibility of the evidence.

■ Special ground 2 is but an elaboration of the general ground that the verdict was not supported by evidence and the contention therein made is covered in the discussion contained in the first division of this opinion.

■ The third ground of the amended motion for new trial alleges: "That the verdict is contrary to law and the principles of equity and justice in that the verdict is without evidence to support it in that nowhere is it shown in the Brief of Evidence and the record is completely silent what Southern Federal Savings & Loan Association of Atlanta is, whether it is a corporation or whether it is a chartered institution for banks and banking or whether this was the property of anyone mentioned in the Bill of Indictment or whether same was the property of stockholders, if any, of Southern Federal Savings & Loan Association of Atlanta, which was alleged to have been stolen in the Bill of Indictment and that the State wholly, fully, and completely failed to prove ownership of any alleged money alleged to have been stolen. . ."

The ground is, according to the case of *Calhoun v. Ozburn*, 186 Ga. 569 (198 SE 706), a complaint that the evidence is not sufficient to support the verdict, because of the failure of the State to prove the owner of the money taken in the robbery was a legal entity. This court held in *Staples v. State*, 114 Ga. 256 (1) (40 SE 264): "Though an indictment for robbery need not charge that the property alleged to have been forcibly taken from the person of the victim, in fact, belonged to a third person, if it does so charge, it is essential that the State prove the case as laid."

In *Green v. Russell*, 176 Ga. 354 (168 SE 65), it was held that where an indictment for forgery failed to set forth whether the name forged was that of a corporation or a partnership but the name purported to be one or the other, the indictment was

not void and the defect could be waived. In *Bremen Foundry &c. Works v. Boswell,* 22 Ga. App. 434, 436 (96 SE 182), it was held that such defect must be raised by special demurrer. It is generally held that failure to file a special demurrer to an indictment waives defects that should be raised by special demurrer. *Hill v. State,* 41 Ga. 484 (2); *Thomas v. State,* 71 Ga. 44 (2); *Frady v. State,* 212 Ga. 84 (1) (90 SE2d 664).

The name of the party alleged in the indictment to be the owner of the money stolen in the commission of the robbery for which the defendant was convicted was alleged in the indictment to be "the property of Southern Federal Savings & Loan Association of Atlanta," which name obviously is not that of a natural person, but imports that the name used is that of either a partnership or corporation. There was no demurrer to the indictment in the present case. The indictment alleged the money stolen was owned by Southern Federal Savings & Loan Association of Atlanta and the evidence proved the charge as laid in the indictment. Thus, the requirements of *Staples v. State,* 114 Ga. 256, supra, were fully met.

This same ground seeks to raise the issue that the evidence did not show there was any money in the vault of Southern Federal Savings & Loan Association when the robbery occurred, and that the evidence adduced by the State was lacking in authenticity because, as the ground contends, the testimony of George O. Taylor, Jr., was vague, and not corroborated by other evidence.

Taylor testified, as has been previously related, that he heard the robbers stuffing the money in a bag and that the Association, immediately after the robbery, was short "nineteen thousand and some odd dollars." The testimony of Taylor was corroborated in every material particular and was not vague, but very positive and clear.

The ground is consequently without merit.

■ Special ground 4 complains that the trial judge charged the jury: "I charge you that if the evidence proves to your satisfaction beyond a reasonable doubt that George O. Taylor, Jr., was in the actual lawful possession of the money and checks described in this Bill of Indictment at the time it is alleged to

404

have been stolen from him, if you find that it was stolen from him, as charged in the Indictment, then in that event you would be authorized to find that the Southern Federal Savings & Loan Association of Atlanta was the owner of the same at said time insofar as this indictment is concerned." The charge is alleged to be error because: it is misleading to the jury in that it authorized them to find the existence of a fact which was completely unsupported by proof; it was confusing to the jury and led them to believe a fact not supported by any proof.

There is no better established rule of law than that lawful possession of the agent is the possession of the principal. "Proof of possession is sufficient evidence of ownership; the possession of an agent or custodian raises a presumption of ownership by his principal." *Hall v. State,* 7 Ga. App. 115 (3) (66 SE. 390). See *Hillyer v. Brogden,* 67 Ga. 24, 26. The charge was correct.

*Judgment affirmed. All the Justices concur.*